McKESSON DRUG COMPANY, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL UNION NO. 730, Defendant.

Civil Action No. 95–1475 (PLF).

United States District Court, District of Columbia.

Feb. 27, 1997.

Susan C. Benner, Seyfarth Shaw Fairweather & Geraldson, Washington, DC, for plaintiff.

Elizabeth J. Head, Beins Axelrod Osborne Mooney & Green, P.C., Washington, DC, for defendant.

*OPINION*

PAUL L. FRIEDMAN, District Judge.

In January 1994, McKesson Drug Company fired Brenda Clark, a warehouse worker employed by McKesson. Ms. Clark subsequently filed a grievance with her employer under the grievance procedures set out in the collective bargaining agreement between her Union and her employer, a grievance that plaintiff asserts was deficient and therefore non-arbitrable. Plaintiff ultimately agreed with Ms. Clark's Union to submit the matter to arbitration. After the arbitrator decided that Ms. Clark's grievance was arbitrable, however, McKesson brought this suit against the Union seeking to vacate the arbitrator's decision under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (1978). The Court now considers plaintiff's and defendant's cross motions for summary judgment.

I. BACKGROUND

On November 30, 1992, McKesson Drug Company entered into a collective bargaining agreement with the International Brotherhood of Teamsters, Local Union No. 730. Among other provisions, Article 14 of the

Agreement provided for a process by which grievances pertaining to discharge and other conditions of employment could be resolved through arbitration. Collective Bargaining Agreement, Art. 14, Pl.'s Mot. for Summary Judgment, Ex. 1 at 11–14. Article 14 of the Agreement provides in part:

A grievance is a complaint regarding wages, hours, working conditions or other conditions of employment which is a specific violation of the expressed provisions of this Agreement. An arbitrable grievance is a grievance concerning the interpretation, intent or specific application of the expressed provisions of this Agreement.

Agreement, Art. 14, § 1, Ex. 1 at 11.

Article 14 goes on to establish a four-step procedure to be followed by any employee harboring a grievance. The second step of this procedure is the focal point of the parties' dispute over the arbitrator's decision. Under that provision, the grievance must be "reduced to writing" and submitted within three workdays. In addition, "[t]he written grievance shall provide the details of the alleged violation of the contract, the specific contract provisions allegedly violated and the specific remedy." Agreement, Art. 14, § 1, Ex. 1 at 12. Also important to this action is the provision that states: "Any grievance not presented to the Company as provided above shall be waived for all purposes." Agreement, Art. 14, § 5, Ex. 1 at 13.

Ms. Clark's hand-written grievance, dated January 13, 1994, states that the nature of her grievance is "termination of my employment on 1–10–94." Pl.'s Mot. for Summary Judgment, Ex. 2. The grievance continues:

It all started about 9:52 pm. I was on the line working when I got this page to come to George Neal['s] office. On my way down I saw Linch and Jerry. I ask[ed] Linch what was up he said he didn't know. I had my clipboard with the order I[was] working on at the time in my hand. Linch told me to give him the clipboard and take my shop steward with me to see George. Once we reach[ed] George['s] office, Kim and L.R. Smith [were already there]. George began to tell me that I hadn't met my quota so they have no choice but to terminate you. He told me what I would

get [as] far as money wise and then he told me to clear out my locker and collect all my belongings [and that] they [would] escort me off the premises. I told them I didn't need anyone to escort me. I can go by myself.

*Id.*

Upon receiving Ms. Clark's grievance, McKesson concluded that it was deficient, and thus non-arbitrable, for two reasons: (1) it was untimely because it was not received within three days after Ms. Clark's termination; and (2) it did not provide the details of the alleged violation of the collective bargaining agreement, the specific contract provisions allegedly violated, or the specific remedy sought, as required under Article 14 of the Agreement.

The arbitrator selected by McKesson and the Union, Joseph Sickles, found that McKesson could not prove that the grievance was filed in an untimely manner. Decision and Award, *In the Matter of McKesson Drug Co. and IBT, Local 730*, Case No. FMCS 94–20663, at 10–13 (May 5, 1995), Complaint, Ex. A. Plaintiff is not contesting this finding in this lawsuit. Pl.'s Opp'n at 6 n. 4.

The arbitrator also concluded that the grievance was filed in compliance with the terms of Article 14, Section 1 of the Agreement:

[A] review of the grievance certainly suggests that the Company was put on notice since after the words "nature of grievance," the employee stated "termination of my employment on 1–10–94." She then recited certain events which took place at the meeting that evening, during which (according to the grievance) there was discussion of her termination. Certainly, the Company was aware of the basic reason for submission of the grievance.... In short, I find no basis to conclude that the Company was misled by the grievance, did not understand the grievance, or was in some manner placed in a disadvantageous position.

Complaint, Ex. A at 8–9. Plaintiff argues that with this part of his decision, the arbitrator went outside his authority by ignoring the language of Article 14, Section 1 of the

Agreement, which requires a grievance to provide the details of the alleged violation, the specific contract provision allegedly violated and the specific remedy sought. In plaintiff's view, Ms. Clark's grievance failed to meet the requirements of an arbitrable grievance under the Agreement and therefore should be "waived for all purposes" pursuant to Article 14, Section 5. On this basis, plaintiff seeks vacation of the arbitration Decision and Award.[1]

## II.  DISCUSSION

### A.  Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. at 2513; *see also Washington Post Co. v. U.S. Dept. of Health and Human Services*, 865 F.2d 320, 325 (D.C.Cir.1989).

In this case, the parties agree that there are no genuine issues as to any material facts; each claims it is entitled to judgment as a matter of law. Summary judgment therefore is the appropriate mechanism to bring resolution to this dispute.

### B.  Vacation of Arbitration Award

▇ The issue before the Court is not whether the Clark grievance should have gone to arbitration under the collective bargaining agreement in the first place. *Cf. AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106

S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986). The parties concede that McKesson and the Union specifically agreed to submit the issue of the arbitrability of the Clark grievance to arbitration. Pl.'s Opp'n at 4. The question is whether the award should be vacated on the basis that it does not "draw its essence from the collective bargaining agreement," *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960), "in that the arbitrator went beyond the clear language of the agreement in rendering his decision." Complaint ¶ 19; *see* Pl.'s Mot. for Summary Judgment at 7–13.

Plaintiff argues that the Court should vacate the arbitration award in this case because the arbitrator ignored, rather than interpreted, the language of the collective bargaining agreement to reach his decision. It asserts that the Clark grievance was non-arbitrable because it failed to make reference to the specific contract provision violated and the specific remedies sought, as required by Article 14, Section 1. Pl.'s Mot. for Summary Judgment at 9. In plaintiff's view, in order for the Clark grievance to meet the prescriptions of Article 14, Section 1, Ms. Clark would have had to write down the specific article and section number of the collective bargaining agreement that McKesson allegedly violated. *See* Pl.'s Opp'n at 4. The Court agrees with defendant, however, that neither the arbitrator nor the Court should require "the same high[ ] standards" of draftsmanship from a warehouse employee as it would from a lawyer or "a professional author in the field," and that Ms. Clark's grievance was sufficiently detailed under the collective bargaining agreement. Decision and Award, *In the Matter of McKesson Drug Co. and IBT, Local 730*, Case No. FMCS 94–20663, at 7 (May 5, 1995), Complaint, Ex. A.

▇ While an arbitrator may not ignore the plain language of a collective bargaining agreement in order to further his or her "own notions of industrial justice," *United Paperworkers International Union, AFL–*

---

1. The "award" in this case was simply the arbitrator's decision that Ms. Clark's grievance was arbitrable.

**4**

CIO v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987), the arbitrator in this case did nothing of the sort. Rather, he interpreted the Agreement and reasonably concluded that the Clark grievance did in fact meet the requirements of Article 14, Section 1: "[T]he Company was put on notice [because] after the words 'nature of grievance,' the employee stated 'termination of my employment on 1–10–94.' ... Certainly, the Company was aware of the basic reason for submission of the grievance." Decision and Award, *In the Matter of McKesson Drug Co. and IBT, Local 730*, Case No. FMCS 94–20663, at 9 (May 5, 1995), Complaint, Ex. A. In essence, the arbitrator accepted the Union's argument that "[a]lthough the grievance [did] not contain a specific contractual citation, it is rather clear that the Grievant was contesting her termination and was seeking reinstatement." *Id.* at 7. His words do not "manifest an infidelity" to his obligation simply to interpret and apply the collective bargaining agreement; they "draw their essence" from it. *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361. His decision therefore should be enforced.

■ Perhaps this Court or another arbitrator might have interpreted Article 14, Section 1 differently, but the question is not which interpretation is the most reasonable. Judicial review of arbitration awards that interpret collective bargaining agreements is "extremely narrow," *American Postal Workers Union, AFL–CIO v. United States Postal Service*, 52 F.3d 359, 361 (D.C.Cir.1995), and "a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one." *W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum & Plastic Workers of America*, 461 U.S. 757, 764, 103 S.Ct.

2177, 2182, 76 L.Ed.2d 298 (1983); *see Berklee College of Music v. Berklee Chapter of Massachusetts Fed'n of Teachers, Local 4412, AFT, AFL–CIO*, 858 F.2d 31, 34 (1st Cir.1988), *cert. denied*, 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989); *Southern Pacific Transp. Co. v. United Transp. Union*, 789 F.Supp. 9, 13 (D.D.C.1992) (judicial review of arbitration awards that interpret collective bargaining agreements is "the narrowest known in the law").

■ As our Court of Appeals recently reiterated:

[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different.

*Cole v. Burns Int'l Security Services*, 105 F.3d 1465, 1474 (D.C.Cir.1997) (quoting *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960)).[2] So long as the arbitrator is "even arguably construing or applying the contract and acting within the scope of his authority" a court may not overturn his decision, even if it is convinced he committed serious error. *United Paperworkers International Union, AFL–CIO v. Misco, Inc.*, 484 U.S. at 38, 108 S.Ct. at 370–71; *see Chicago Typographical Union No. 16 v. Chicago Sun–Times, Inc.*, 935 F.2d 1501, 1504–05 (7th Cir.1991). The arbitrator did not ignore the language of the collective bargaining agreement in this case, and it is not difficult for the Court to conclude that he "arguably construed" Article 14, Section 1 and acted within the scope of his authority. This Court therefore will not vacate the arbitration award.[3]

---

2. Moreover, "[b]ecause the parties to a collective bargaining agreement maintain an ongoing relationship, they remain free to rewrite their contract and thereby 'correct' what they perceive to be 'errors' on the part of the arbitrator." *Cole v. Burns Int'l Security Services*, 105 F.3d at 1475. The arbitrator's interpretation of Article 14, Section 1 therefore need not set a precedent that will forever bind plaintiff; plaintiff has the opportuni-

ty remedy the arbitrator's "error" during future collective bargaining agreement negotiations with defendant.

3. Plaintiff maintains that if the Court does not vacate the arbitration award, Mr. Sickles will not have continuing jurisdiction over the merits of the Clark grievance. Pl.'s Opp'n at 7–9. Defendant, on the other hand, requests that the Court

### C. Attorneys' Fees

The remaining question is whether, pursuant to its equitable powers, the Court should award attorneys' fees to defendant, who, after all, has prevailed in this action. Defendant argues that plaintiff should be sanctioned for refusing to abide by the arbitration award "without justification." Def.'s Mot. for Summary Judgment at 9. Absent an authorizing statute, however, a court may only award attorneys' fees if the "losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." *National Ass'n of Letter Carriers, AFL–CIO v. United States Postal Service*, 590 F.2d 1171, 1176 (D.C.Cir.1978). The Court finds no basis for labeling plaintiff's challenge to the arbitration award vexatious, wanton, or brought in bad faith. Rather, plaintiff brought a legitimate claim, which the Court has carefully considered. Simply because defendant won this particular challenge does not entitle it to an award of attorneys' fees.

An Order consistent with this Opinion shall be entered this same day.

SO ORDERED.

### ORDER AND JUDGMENT

Upon consideration of plaintiff's and defendant's respective motions for summary judgment, the memoranda in support thereof and both parties' opposition and reply briefs, it is hereby

ORDERED that Plaintiff's Motion for Summary Judgment is DENIED; it is

FURTHER ORDERED that Defendant's Motion for Summary Judgment is GRANTED; it is

FURTHER ORDERED that pursuant to the Opinion issued this same date, JUDGMENT is entered for defendant in this case; and it is

FURTHER ORDERED that the Clerk of the Court shall remove this case from the docket of the Court.

SO ORDERED.

order the parties to arbitrate the merits of the Clark grievance before Mr. Sickles pursuant to their original agreement to submit to arbitration. Def.'s Mot. for Summary Judgment at 9; Def.'s Reply at 2. That matter is not presently before the Court. There is no mention of it in the complaint or the answer, and no counterclaim has been filed.

The Court notes, however, that McKesson did in fact state that the issue before Mr. Sickles was *both* "the arbitrability of Ms. Clark's grievance and whether or not Ms. Clark was terminated for just cause." Def.'s Mot. for Summary Judgment, Attachment D, Letter from Mr. M.J. Millet to Ms. Elizabeth Head, October 18, 1994. Apparently, the arbitrator was so advised in October 1994 and operated on the assumption that he would be deciding both the arbitrability issue and the merits of the case. Pl.'s Opp'n, Ex. E, Letter from Mr. Joseph A. Sickles to Mr. M.J. Millet, May 5, 1995. Sometime thereafter, plaintiff changed its position and asserted to defendant's counsel for the first time that "[t]he arbitrability of this grievance is the sole *issue* before Mr. Sickles." Pl.'s Opp'n, Ex. B, Letter from McKesson's M.J. Millet to Ms. Elizabeth J. Head, January 24, 1995.