UNITED STEELWORKERS OF AMERICA, AFL–CIO–CIC, Plaintiff,

v.

HEMPT BROTHERS, INC., Defendant.

Civ. A. No. 1:CV–94–0023.

United States District Court, M.D. Pennsylvania.

Aug. 16, 1994.

David Goldman, United Steelworkers of America, Pittsburgh, PA, for plaintiff.

Alan R. Boynton, Jr., Elizabeth A. Dougherty, Robert G. Haas, McNees, Wallace & Nurick, Harrisburg, PA, for defendant.

### MEMORANDUM

RAMBO, Chief Judge.

Before the court are the parties' cross-motions for summary judgment and Plaintiff's motion to strike an affidavit submitted in support of Defendant's motion. Briefs have been filed and the motions are ripe for disposition.

### Background

This case arises out of the discharge by Defendant of a union employee, James Shurmanek. Shurmanek was terminated when he failed to show up for work on November 18, 1991.

Shurmanek, a heavy equipment operator, is a member of the Plaintiff–Union. At the time of Shurmanek's discharge, the Union and Defendant (by way of the Pennsylvania Heavy & Highway Contractors' Bargaining Association (PHHCBA")) were parties to a collective bargaining agreement (the "1989 Agreement" or the "Master Agreement"). (Compl., Ex. 1.) The 1989 Agreement covered all "public work," essentially work for governmental entities and public utilities, and included a multi-step grievance procedure. At the time, a separate agreement (the "Memorandum of Agreement") covered "private work," work for private entities. (*Id.*, Ex. 3.) Under the latter agreement, employees were paid at a lower wage rate for private work than for public work. The job to which Shurmanek failed to report on November 18, 1991, was private work.

The Union grieved Shurmanek's termination on his behalf. This grievance (the "discharge grievance") was resolved at the third stage of the Agreement's grievance procedure after a hearing before the two-member Union–PHHCBA panel (the "Panel"). Defendant did not appear at the hearing although its representative apparently

contacted the PHHCBA panel member prior to the hearing to advise him of the company's position. The Panel summarized its disposition of the grievance as follows:

Results of [the Panel] hearing were as follows:

1) Termination of health insurance as per the Agreement between the Pennsylvania Heavy & Highway Contractors Bargaining Association and the United Steelworkers of America was improperly instituted.

2) Employee was not employed under the conditions of the Agreement between the Pennsylvania Heavy & Highway Contractors Bargaining Association and the United Steelworkers of America at that time.

3) The discharge of the employee by Hempt Bros. due to refusal of his employment on a private job has no bearing under the conditions of the Agreement between the Pennsylvania Heavy & Highway Contractors Bargaining Association and the United Steelworkers of America, inasmuch as the job was private work.

4) The insurance benefits accrued under the Agreement of the Pennsylvania Heavy & Highway Contractors Bargaining Association and the United Steelworkers of America shall [sic] not have been interrupted and, therefore, we request that benefits be reinstated as of 12/1/91 and all benefits entitled to our laid-off employees shall be extended to James Shurmanek, employee of Hempt Bros. Construction Co., as designated in the Agreement between the Pennsylvania Heavy & Highway Contractors Bargaining Association and the United Steelworkers of America.

(*See* March 30, 1992 Letter, Compl., Ex. 5.)

As a result of these findings, the Pennsylvania Heavy & Highway Welfare Fund reimbursed Shurmanek for five months worth of health insurance premiums he had paid but which the Panel concluded were due him under the 1989 Master Agreement. (*See* June 23, 1992 Letter from Norman White, attached to Suppl. Jones Aff.)

During Spring and Summer 1992, when Defendant began rehiring laid-off employees, it did not recall Shurmanek but recalled less senior employees instead. The Union filed a second grievance (the "recall grievance") on Shurmanek's behalf on July 17, 1992. This grievance was resolved at the final stage of the grievance proceedings, arbitration. After a hearing, arbitrator William Marlowe issued his September 8, 1993 decision in which he found that Shurmanek had been properly discharged on November 18, 1991. (Compl., Ex. 8.) Accordingly, he sustained Defendant's failure to recall Shurmanek and denied the Union grievance.

The Union filed the instant action seeking to enforce what it believes to be the proper understanding of the Panel disposition of the discharge grievance and to vacate the arbitrator's decision with respect to the recall grievance. The parties now have filed cross-motions for summary judgment.

***Discussion***

**I. Plaintiff's Motion to Strike**

█ For the most part, Plaintiff's motion to strike the affidavit of Joseph R. Nokovich is moot. Plaintiff's primary objection to the affidavit is that the affidavit's final paragraph indicates that it is based on the affiant's "knowledge, information and belief." (Nokovich Aff., ¶ 21.) Subsequently, Nokovich has filed a supplemental affidavit indicating that the information contained within the affidavit is based on his personal knowledge. Further, counsel for Defendant have indicated that they added this clause, which after a review of the caselaw they concede is improper, as a standard closing that they routinely employ when preparing an affidavit. (*See* Dougherty and Haas Affs.) Counsel indicated that, despite the language employed, when they prepared the affidavit, they understood that the information contained therein was based on Nokovich's personal knowledge. Accordingly, Plaintiff's objection in this regard is not persuasive.

█ Plaintiff also objects that portions of paragraphs 13 and 19 are merely speculation or "pure conclusory hearsay." To the extent that Nokovich purports to interpret the letter reciting the Panel findings, Plaintiff's objection is well-taken and these portions of paragraph 13 will be disregarded. However, to the extent that paragraph 13 asserts that Defendant did not contribute to the benefits

paid to Shurmanek subsequent to his discharge, the affidavit will stand. Further, as clarified by paragraph four of his supplemental affidavit, paragraph 19 of Nokovich's affidavit is permissible.

## II. Cross–Motions for Summary Judgment

The Third Circuit Court of Appeals has capsulized the standards for the award of summary judgment under Federal Rule of Civil Procedure 56:

> Summary judgment may be entered if "the pleadings, deposition[s], answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). An issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, [247–49] 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Equimark Comm. Finance Co. v. C.I.T. Financial Serv. Corp.*, 812 F.2d 141, 144 (3d Cir. 1987). If evidence is "merely colorable" or "not significantly probative" summary judgment may be granted. *Anderson*, [477 U.S. at 249–51] 106 S.Ct. at 2511; *Equimark*, 812 F.2d at 144. Where the record, taken as a whole, could not "lead a rational trier of fact to find for the nonmoving party, summary judgment is proper." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, [586–88] 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

*Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir.1987). Once the moving party has shown that there is an absence of evidence to support the claims of the nonmoving party, the nonmoving party may not simply sit back and rest on the allegations in his complaint, but instead must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (*quotations omitted*).

## A. Scope of Review of Arbitration Award

The issue central to the instant motions is the scope and effect of the initial Panel findings. The parties essentially agree on the legal principles applicable to a court challenge to an arbitrator's award.

 Because arbitration is a preferred method for the resolution of labor disputes, judicial review of arbitration awards is extremely narrow. *High Concrete Structures, Inc. v. United Elec. Workers of Am., Local 166*, 879 F.2d 1215, 1218 (3d Cir.1989). In the seminal *Steelworkers Trilogy*, the United States Supreme Court established the basic principles of the modern approach to judicial review of arbitration awards. *United Steelworkers of Am. v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). In general,

> [t]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if the courts had the final say on the merits of the awards.

. . . . .

> [T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction that was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*Enterprise Wheel & Car*, 363 U.S. at 596, 599, 80 S.Ct. at 1360, 1362 (1960).

 However, "[t]here are limits to such judicial deference. Courts may vacate awards tainted by fraud or bias, or ... awards dealing with material outside the arbitrator's authority." *High Concrete*, 879 F.2d at 1218 (citing 9 U.S.C. § 10).

168

[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance to many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, the courts have no choice but to refuse enforcement of the award.

*Enterprise Wheel & Car,* 363 U.S. at 597, 80 S.Ct. at 1361. *See also John Morrell & Co. v. Local Union 304A, United Food & Commercial Workers,* 913 F.2d 544, 559 (8th Cir. 1990) ("While our review of an arbitration award is narrowly circumscribed, this judicial deference 'does not grant carte blanche approval to any decision an arbitrator might make.'") (quoting *Piggly Wiggly Operators' Whse. v. Piggly Wiggly Operators' Whse. Indep. Truck Drivers Union, Local No. 1,* 611 F.2d 580, 583 (5th Cir.1980)), *cert. denied,* 500 U.S. 905, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991).

### B. Application to this Case

■ In this case, Plaintiff claims that arbitrator Marlowe's award fails to draw its essence from the collective bargaining agreement because it impermissibly addressed the precise issue already conclusively resolved in favor of Plaintiff by the prior grievance Panel decision. The 1989 Agreement states, in pertinent part, that "[t]he arbitrator shall not have the authority to add to, detract from or otherwise modify the terms and conditions of [the 1989 Agreement]" and makes an unappealed decision of a grievance panel "binding upon both parties" and "not [ ] subject to reopening by any other party except by mutual agreement." (1989 Agreement at 22.) Plaintiff insists that the impropriety of Shurmanek's discharge was conclusively determined by the Panel decision on the discharge grievance which became final when Defendant failed to appeal it and that the Union did not agree to reopen the issue in the second grievance proceeding. Plaintiff claims that Marlowe's arbitration award impermissibly reversed this finding and that

such an action is inconsistent with the 1989 Agreement's finality provisions.

Defendant, on the other hand, argues that the interpretation and effect of the prior Panel decision is left in the first instance to the arbitrator. It contends that the arbitrator interpreted the Panel decision much more narrowly than does Plaintiff, that this interpretation is entitled to substantial deference and, in any event, is reasonable.

Plaintiff does not dispute that interpretation of the Panel decision and its effect must be determined in the first instance by the arbitrator. (*See* Pls.' reply Br. at 9.) Nor does it contest that the arbitrator's interpretation is entitled to substantial deference. (*Id.*) Thus, the instant motion turns on whether the arbitrator's interpretation of the Panel agreement and its scope and effect is reasonable.

This inquiry is complicated by the fact that neither the Panel decision nor that of the arbitrator is particularly precise. Plaintiff argues that the Panel clearly found that Shurmanek's discharge was improper and affected none of his rights under the master agreement; Defendant, on the other hand, argues that the Panel opinion was limited solely to the issue of insurance coverage. This court does not profess to have a clear understanding of the precise interplay between an employee's status (i.e. active, laid-off, terminated), his rights under the Agreement with respect to his employer and the Welfare Fund, and the responsibilities of the employer. Without such an understanding, this court cannot conclusively rule out either interpretation.

The arbitrator's decision nowhere explicitly discusses the Panel decision. In his decision, the arbitrator made an oblique reference to "certain other positions and exhibits" that were presented to him which he felt "were not fully developed, nor could they be." (Compl., Ex. 8.) This may be a reference to the prior Panel decision. Yet, assuming this is true, it does not give the court a clue as to the basis for his rejection or differentiation of the Panel decision.

The arbitrator may have believed as Defendant alleges that the Panel decision re-

ferred only to Shurmanek's right to insurance coverage under the Master Agreement. With further explication of the interplay between the various factors noted above, this result might be sustainable. However, the arbitrator also may have believed that the prior Panel decision was simply incorrect and that he was free to decide the same issue differently. Such reasoning is much less likely sustainable in light of the language in the 1989 Agreement making an unappealed Panel decision binding on the parties. Under these circumstances, the arbitrator would appear to be merely "dispens[ing] his own brand of industrial justice." *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

Accordingly, the court will remand to the arbitrator with instructions either to reconsider his prior decision in light of the Panel decision or to clarify why he does not think that the Panel decision is dispositive in this case. The arbitrator may request further evidence or briefing if he deems it appropriate.

This court believes that this is the proper course of action at this time. The issues raised are properly matters that should be considered by the arbitrator in the first instance. The United States Supreme Court has noted that arbitrators are chosen because they have a special expertise and informed judgment with respect to labor matters and the law of the shop. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). To the extent that the arbitrator already has considered the effect of the Panel decision, he is the person to explain how he believes it does or does not control in this case. To proceed in any other fashion at this point, the court would merely be taking a shot in the dark, speculating as to what the arbitrator or Panel concluded and why they reached such conclusions.

However, the court is conscious that its remand may well cost the parties in terms of both time and expense and therefore, takes this course of action reluctantly. The parties may wish to consider settling this matter amicably if that is possible, rather than continuing the costly and time-consuming litigation process. An appropriate order will be issued.

## ORDER

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

(1) Plaintiff's motion to strike is **GRANTED** in part and **DENIED** in part.

(a) Paragraph 13 of the Nokovich affidavit will be disregarded insofar as it purports to interpret the letter reciting the findings of the discharge grievance Panel.

(b) The remainder of Plaintiff's motion is **DENIED.**

(2) This matter is remanded to arbitrator William Marlowe for reconsideration or clarification in light of the accompanying memorandum.

(3) Disposition of the parties' cross-motions for summary judgment is **DEFERRED** pending reconsideration or clarification of the arbitrator's prior decision.

(4) The clerk of court shall serve a copy of this order on arbitrator William R. Marlowe at the following address: 335 Strafford Avenue, Strafford, PA 19087.

(5) Within ten (10) days of this order, the parties shall contact the arbitrator to determine if he deems any further filings or proceedings necessary to carry out this order.

(6) No later than October 17, 1994, the parties shall file with this court a joint report on the status of this matter before the arbitrator.