**LOCAL 2094, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, Plaintiff,**

v.

**HOWARD UNIVERSITY HOSPITAL, Defendant.**

**No. CIV. A. 97–0873 JHG.**

United States District Court, District of Columbia.

March 12, 1998.

Stephen Walter Godoff, Godoff & Zimmerman, Baltimore, MD, for Local 2094, American Federation of State, County & Municipal Employees, AFL–CIO.

Anita Barondes, Michael Franklin Kleine, Seyfarth, Shaw, Fairweather & Geraldson, Washington, DC, for Howard University Hospital.

### MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Plaintiff Local 2094, American Federation of State, County And Municipal Employees, AFL–CIO ("the Union") and defendant Howard University Hospital ("the Hospital") are parties to a collective bargaining agreement ("CBA"). In 1995, the Hospital laid off a number of employees covered by the CBA, the term of art for the layoffs being a reduction in force ("RIF"). The Union filed grievances protesting the Hospital's selection of the employees that were laid off or "RIFed." Pursuant to the CBA, the grievances were aired in an evidentiary hearing before a mutually selected arbitrator, Richard Bloch ("Bloch"). Before reaching all of the Union's grievances, Bloch determined that the parties sharply differed on the correct interpretation of the contract provision governing RIFs. With the parties' agreement, he severed that issue, took evidence with respect to that issue, and granted an award in favor of the Hospital with respect only to the correct interpretation of one section of the CBA.

The Union filed its complaint in this action seeking to vacate the Bloch award, and now both parties have filed motions for summary

judgment.[1] The Court's review of arbitration awards such as this is quite limited; the party seeking to vacate an award must show that the award fails to draw its "essence" from the CBA and is instead an exercise of "industrial justice." The Court has concluded that there are no genuine issues of material fact in dispute and that the Bloch award draws its essence from the CBA. Therefore, the Union's motion for summary judgment will be denied and the Hospital's motion for summary judgment will be granted.

## BACKGROUND

The Union and the Hospital have had a long-standing collective bargaining relationship. The agreement at issue in this dispute became effective on September 28, 1992. The contract provision at issue in this case is Article X, § 3:

**Section 3. Layoff**

In the event it becomes necessary to lay off employees for any reasons, [sic] the Union shall have the opportunity of discussing alternate actions with the Employer. *If layoff cannot be avoided, employees shall be laid off in the inverse order of their seniority within the unit.* At least 30 days written notice shall be given to any affected employee prior to any such action. Any affected employee who is not so notified shall receive regular pay for the thirty-day period or any part thereof for which notification was not given.

Pl. Mot. Ex. A at 14 (emphasis added).

In June 5, 1990, under the predecessor agreement, which contained the same Article X language as in the 1992 agreement, the Hospital laid off 300 employees. The Hospital laid them off in the inverse order of their seniority within their respective job classifications rather than in the inverse order of their seniority within their respective units

or departments. The Union filed a grievance with respect to one employee, claiming that under Article X, § 3, the Hospital was obliged to apply seniority by unit rather than by job classification. The grievance went to arbitration before Arbitrator Marvin Johnson ("Johnson").

While that arbitration was pending decision, the CBA expired. However, the CBA provided that its terms would remain in effect during the negotiation of a successor CBA. At the outset of the negotiation, the negotiators for both parties established ground rules that provided that once a contract provision had been agreed to tentatively, it could not be reopened for negotiation without mutual consent of the Chief Negotiators. Def. Summ. J. Mem. Ex. 2 ("CO Ex. 2"). Somewhat oddly, while both parties remained at risk of receiving an adverse interpretation of Article X from Johnson, the negotiators tentatively agreed on January 21, 1992 to carry over the language of Article X, § 3 into the successor CBA. *See* Def. Summ. J. Mem. Ex. 1 at 5 (hereafter "Bloch Op.") & Ex. 2 ("U # 3").

On May 12, 1992, Johnson issued his award in favor of the employee, holding that Article X, § 3 required the Hospital to lay off employees by seniority within each department rather than by seniority within job classification. Bloch Op. at 5. Hospital officials responded by drafting a Memorandum of Understanding ("MOU") that, in part, would avoid "what they considered a disastrous interpretation of the labor agreement." *Id.* They proposed that the parties enter into a side agreement to avoid reopening Article X for negotiation. *Id.* at 13.

Bloch found that there were, in fact, multiple versions of the MOU that were signed by various negotiators for both sides,[2] but the upshot was its provision that:

relegated this aspect of their dispute to the bottom of the page, the Court will do so as well, and because the Hospital has failed to produce evidence to the contrary, the Court will assume for purposes of the cross motions that the action was timely filed and that the Union was party to the arbitration and therefore has standing.

2. *See* Bloch Op. at 6 n. 3.

1. In skirmishing footnotes, the Hospital urges that its motion, styled as a motion for summary judgment, be treated alternatively as a motion to dismiss either because the action is time-barred or because the Union was not party to the arbitration and therefore lacks standing to bring this action; the Union counters with factual allegations that would preclude the Court from dismissing the case on either ground with the present state of the record. Because the parties have

(2) With respect to potential confusion created by a recent arbitration decision concerning the application of seniority *under Article X, Section 3, the parties agree that it is the intent of this provision to apply seniority based on job classification within a department [and/or] organizational unit.*

Bloch Op. at 6 (emphasis added); *see also id.* at 12.

When the final CBA was agreed upon by the negotiators, it was ratified by the Union membership and signed by the President of the University. The Union did not submit the MOU to its membership for ratification, nor did the Union inform the Hospital that the MOU had not been ratified. *Id.* at 12–14.

On January 24, 1995, and again on August, 8, 1995, the Hospital laid off employees covered by the CBA. Notwithstanding the MOU that had been signed by the contract negotiators, the Union filed grievances on behalf of the employees laid off, again claiming that the Hospital had violated Article X by applying seniority by job classification rather than by unit.[3] Pursuant to the CBA, the Union's grievances were subjected to arbitration before a neutral arbitrator, Bloch, who had been agreed upon by the parties. While the grievances extended beyond interpretation of Article X, § 3 and the effect, if any, of the MOU, Bloch quickly identified the contract interpretation dispute as a threshold issue. With the consent of the parties, he severed the contract interpretation issue, held an evidentiary hearing with respect to that issue, and, on January 14, 1997, issued an award in favor of the Hospital on that issue. Bloch Op. at 14–15.

During the evidentiary hearing, Bloch identified the "central question" as being "whether this MOU was effective." *Id.* at 7. After receiving evidence and hearing argument by the Union that the MOU did not reflect the agreement reached at the negoti-

ating session and that the membership had not ratified the MOU, Bloch stated that:

the finding here is that the MOU was properly negotiated by the parties and that it represents the mutually-agreed intent at the time of bargaining.

*Id.* Further:

the conclusion must be that the parties had, in fact, reversed the impact of Article X, as interpreted by the previous arbitration decision, and that they had agreed to accept reductions in forces by seniority based on job classification within a given department and/or organizational unit.

*Id.* at 12. As to the lack of ratification, Bloch found that:

[O]nce the parties had achieved agreement on the MOU ... it was incumbent on the union to present that document to the membership for ratification or, alternatively, to inform management that it would not do so. At the least, it was incumbent upon the union to inform management either that it had determined *not* to submit the MOU to the membership (thereby indicating there was no meeting of the minds as to a very significant portion of the contract) or that, in any event, there had been no ratification of that language..... Failing that, fairness dictates that the union not be able to await the outcome of the next RIF procedure, only to claim, for the first time, the invalid nature of the MOU's force reduction agreement.

....

Care should be taken in reading this Opinion. The conclusion here is limited to the finding that management did not violate the labor agreement by resorting to seniority by classification within a department and/or organizational unit.

Bloch Op. at 14. This action followed.

## DISCUSSION

### A. Standard of Review

Summary judgment is appropriate when there is "no genuine issue as to any material

---

**3.** There are some unresolved factual disputes as to the precise criteria used by the Hospital in laying off employees, but those issues were not tried before Bloch. For purposes of the contract interpretation issue tried before him and the subject of the cross motions, the Union contends that the Hospital reduced its work force by inverse order of seniority within each job classification rather than within each department or unit. *See* Bloch Op. at 14; Pl. Summ. J. Mem. at 1–2.

fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ Where, as here, a court is asked to vacate an arbitration award under a collective bargaining agreement, review is even more circumscribed. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36–37, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). It is well-settled in this Circuit that:

> [T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*Cole v. Burns Int'l Security Serv.*, 105 F.3d 1465, 1474 (D.C.Cir.1997) (quoting *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)). As a result:

> [A]n award will not be vacated even though the arbitrator may have made, in the eyes of judges, errors of fact and law unless it 'compels the violation of law or conduct contrary to accepted public policy.'

*American Postal Workers Union v. United States Postal Serv.*, 789 F.2d 1, 7 (D.C.Cir. 1986) (footnote omitted). But:

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement.

*Cole*, 105 F.3d at 1474 (quoting *Enterprise Wheel*, 363 U.S. at 597); *see also* Theodore J. St. Antoine, *Judicial Review of Labor Arbitration Awards: A Second Look at* Enterprise Wheel *and its Progeny*, 75 MICH. L. REV. 1137, 1140 (1977).

■ This standard of review places a party seeking to vacate an award upon a steep upward grade. To have sufficient traction to propel its case to the summit and successfully overturn an award, a party must show through the record that the arbitrator's decision is grounded in the arbitrator's "own brand of industrial justice" rather than in the parties' collective bargaining agreement. Here, the Union is spinning its wheels by relitigating before this Court the case it put on before Bloch. Because Bloch's Opinion supporting his award clearly reflects that he construed the CBA, and that his decision drew its essence therefrom, the award shall be enforced.

## B. The Bloch Award

■ The task before Bloch was to interpret Article X, § 3. Another arbitrator interpreted this very provision in the predecessor agreement. Bloch was not bound by the prior interpretation because (1) it concerned a different agreement than the one Bloch interpreted; (2) the parties executed a MOU clarifying their intent with respect to that provision and therefore the issue before Bloch was different than was before Johnson; and (3) arbitration decisions are not given *res judicata* effect unless that is specifically provided for in the CBA. *Hotel Ass'n of Washington, D.C., Inc. v. Hotel & Restaurant Employees Union*, 963 F.2d 388, 390 (D.C.Cir.1992); *cf. United Transp. Union v. National R.R. Passenger Corp.*, 882 F.Supp. 1, 3 (D.D.C.1995).

■ The parties presented Bloch with competing interpretations of the language "[i]f layoff cannot be avoided, employees shall be laid off in the inverse order of their seniority within the unit." Either this meant that layoffs would be by seniority within job classification within each unit (as the Hospital contended) or it meant by seniority within each unit (as the Union contended). The parties also presented Bloch with the issue of the effectiveness of the MOU, executed during negotiations over the CBA, which stated, in pertinent part, that "under Article X, Sec-

tion 3, the parties agree that it is the intent of this provision to apply seniority based on job classification within a department [and/or] organizational unit."

Bloch chose to interpret Article X consistently with the MOU in granting the award to the Hospital. Bloch was under no duty to explain why he chose one interpretation over the other in making his award. *See Chicago Typographical Union v. Chicago Sun–Times,* 935 F.2d 1501, 1506 (7th Cir.1991) (Posner, J.); *Sargent v. Paine Webber Jackson & Curtis, Inc.,* 882 F.2d 529, 532 (D.C.Cir.1989). He nonetheless chose to share with the parties his reasoning in a 15–page opinion.

■ In this Court, the Union relies heavily on Bloch's reference to "fairness" to make him out—like the Sheriff in a Wild West town—as a cowboy arbitrator dispensing his own brand of industrial justice in choosing to interpret Article X, § 3 as being classification-based rather than unit-based.

The Union's argument is unpersuasive. The Court finds no reason to disturb Bloch's implicit finding that the CBA authorized him to decide whether Article X should be interpreted consistently with the MOU. He could well have reached that conclusion solely by reference to the CBA, which makes interpretation of the agreement arbitrable. That delegation of authority to "interpret" the agreement in all likelihood extends to deciding what writings, including the MOU, evidence the terms of the CBA. *See W.R. Grace and Company v. Local Union 759, International Union of the United Rubber, Cork, Linoleum and Plastic Workers of America,* 461 U.S. 757, 765, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983) ("the scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator").

But here, the matter is made even clearer because the parties specifically submitted the issue to Bloch and put on evidence as to whether the MOU was effective. He termed this the "central question" of the dispute. Bloch Op. at 7. This Court recognizes that with regard to the scope of an

arbitrator's authority, there is a pending issue in our Court of Appeals as to whether a court should look more to the form or the substance of the issues submitted to the arbitrator in reviewing the arbitrator's interpretation of his own jurisdiction. *Compare Madison Hotel v. Hotel and Restaurant Employees, Local 25, AFL–CIO,* 128 F.3d 743, 746 (D.C.Cir.1997), *r'hrg en banc granted,* 135 F.3d 779 (D.C.Cir.1998) *with id.* at 750–51 (Randolph, J., dissenting). While the dissent's deferential position appears to be more consistent with the prior law in this Circuit, regardless of which view prevails, the facts of the instant case satisfy either standard: the MOU issue was submitted to Bloch in both form and substance.

Having concluded that Bloch's award was granted within the scope of his authority, the award must be confirmed. The Union's arguments that Bloch erred in holding the Union to be bound to the MOU are unavailing. Whether Bloch's conclusion is treated as a finding of fact or a conclusion of agency law, it is not subject to review in this Court. *See Kanuth v. Prescott, Ball & Turben, Inc.,* 949 F.2d 1175, 1178 (D.C.Cir.1991); *American Postal Workers Union,* 789 F.2d at 7.

■ But even were the conclusion reviewable, the Court would still uphold the award. Taken in context, Bloch's "fairness" reference can be understood simply as an application of principles of estoppel or, perhaps, principles of contract law, such as those holding that when a party's duty to perform (i.e. to be bound by the MOU) is subject to a condition (ratification by the membership), and the party is responsible for the non-occurrence of that condition (by not submitting the MOU for ratification), the condition is excused and the duty to perform obtains. *See* Restatement (Second) Contracts §§ 225, 227, 230(2)(a).

■ Finally, Bloch's decision to "enforce" the MOU against the Union[4] drew its essence from the CBA, even if, as the Union alleges, the MOU was not itself an agreement between the parties. Bloch's task was to determine the parties' intent with respect to Article X. Bloch was well within his prov-

---

4. *See* Bloch Op. at 12.

ince to consider the MOU, which expressly states at least the negotiators' understanding of Article X, as probative evidence of the parties' understanding of Article X. His reference to "enforcing" the MOU can be understood in this light as well. And, "[a]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers,* 484 U.S. at 38. Thus, whatever the meaning of Bloch's reference to the MOU, ultimately he chose one of two competing interpretations of Article X, § 3. This is precisely what the parties had bargained for when they agreed to submit interpretation disputes to arbitration.

The Union has no cause for complaint with this result. As Chief Judge Edwards recently noted:

> [A]lthough arbitration awards are final as far as the courts are concerned, they need not be final for the parties. Because the parties to a collective bargaining agreement maintain an ongoing relationship, they remain free to rewrite their contract and thereby 'correct' what they perceive to be 'errors' on the part of the arbitrator.

*Cole,* 105 F.3d at 1475; *accord McKesson Drug Co. v. International Bhd. of Teamsters, Local Union No. 730,* 957 F.Supp. 1, 4 n. 2 (D.D.C.1997).

## CONCLUSION

In their negotiations over the terms of the CBA, the parties chose to carry forward the ambiguous language of Article X, § 3 into that agreement even while Arbitrator Johnson's decision interpreting that language in the predecessor agreement was pending. After the Johnson decision, the negotiators signed an MOU designed to clarify the parties' intent with respect to that provision, but because the MOU was not ratified, the meaning of Article X, § 3 potentially remains ambiguous with respect to any future reductions in force. Perhaps each of the parties sees strategic advantage in maintaining the ambiguity. If not, the choice belongs to them to clarify that provision in future negotiations. But given the ambiguities, the Court does not find that Bloch departed from the agreement in his interpretation. Accordingly, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment shall be, and hereby is, GRANTED; and it is

**FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment shall be, and hereby is, DENIED.

IT IS SO ORDERED.

### *JUDGMENT*

In accordance Fed.R.Civ.P. 58 and the Memorandum Opinion and Order issued this date, judgment is hereby entered in favor of the defendant and against the plaintiff. The Court confirms the arbitration award of Richard Bloch issued on January 14, 1997 in the matter of 1995 Reductions in Force.

IT IS SO ORDERED.