**UNITED PARCEL SERVICE, INC., Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AFL–CIO, Defendant.**

**Civil Action No. 94–0258(JHG).**

United States District Court, District of Columbia.

March 26, 1998.

Peter Francis Healey, Fulbright & Jaworski, L.L.P, Washington, DC, Cherie B. Artz, Schnader, Harrison, Segal & Lewis, L.L.P., Washington, DC, Martin Wald, William H. Brown, Schnader, Harrison, Segal & Lewis, Philadelphia, PA (pro hac vice), for Plaintiffs.

Daniel Brandeis Edelman, Yablonski, Both & Edelman, Earl Vincent Brown, Jr., International Broth. of Teamsters, Washington, DC, James L. Linsey, Cohen, Weiss & Simon, New York City (pro hac vice), for Defendant.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

We come to the close of another chapter in the ongoing saga of this labor dispute. This case was reopened after the parties returned from arbitration with an arbitral award resolving only a procedural "Point of Order." That award appears to have been based on an erroneous belief by the arbitrator that this Court would be available to hear the merits of this dispute in the event that he did not.

Plaintiff United Parcel Service, Inc. ("UPS") has filed an amended complaint, which defendant International Brotherhood of Teamsters, AFL–CIO ("IBT") has not answered. IBT has nonetheless filed a motion for judgment on the pleadings, which shall be granted in part and denied in part. Also pending is IBT's motion for confirmation of the arbitration award, which shall be denied without prejudice. The amended complaint will be dismissed with prejudice, and the parties shall return to the arbitrator to allow him to reconsider his earlier opinion and award in light of this Opinion and Order.

## BACKGROUND

For present purposes, it is useful to revisit the history of this case, as has been set forth more fully in the Court's previous opinion. *See United Parcel Serv. v. International Bhd. of Teamsters,* 859 F.Supp. 590, 592–93 (D.D.C.1994). More than four years ago, UPS announced that it would be increasing the weight limit for packages that it would pick up and deliver from 70 pounds to 150 pounds starting on Monday, February 7, 1994. This change in policy was not greeted warmly by UPS's unionized employees, who would be doing the heavy lifting. Fearing a work stoppage, UPS filed a motion for a Temporary Restraining Order ("TRO") on Friday, February 4, 1994 to prevent union members from striking. The TRO was issued that day. Disregarding the TRO, a number of IBT members commenced a strike on February 7, 1994. UPS immediately moved for contempt sanctions.

At the 11th hour, after this Court had begun an evening hearing on the motion, the parties settled the contempt issue. In pertinent part, the settlement agreement provides:

5. Except as provided below, UPS waives any and all claims for contempt, damages

or fines against the IBT, any subordinate body of the IBT, any officers, agents, employees or members of the IBT or of its subordinate bodies related to the work stoppage commencing on February 7, 1994; however, UPS preserves its claim, if any, against the IBT for damages arising from or relating to the work stoppage of February 7, 1994 for a violation of the parties' collective bargaining agreement.

IBT's Mem. in Supp. of J. on the Pleadings (hereafter "IBT J.P. Mem.") Ex. A ¶ 5. The settlement agreement was signed by representatives of IBT, the Teamsters National United Parcel Service Negotiating Committee ("NNC"), and UPS. UPS filed this lawsuit two days later.

In its complaint, UPS sought damages, alleging that IBT had called for a nationwide work stoppage in violation of the no-strike provision of the parties' collective bargaining agreement and in violation of the TRO. *See* Compl. ¶¶ 17–18. In response, IBT filed an answer and a two-count counterclaim to recover lost wages stemming from the work stoppage and to reform the collective bargaining agreement, contending that the 70–pound weight limit was a custom and practice under the agreement. *See* Answer and Countercl. at 9–10.

In its answer and counterclaim, IBT espoused an agnostic view as to whether it was a party to the National Master United Parcel Service Agreement ("Master Agreement"), the collective bargaining agreement with UPS. On the one hand, IBT asserted an oblique response to UPS's allegation that IBT was a party to the Master Agreement; IBT admitted only that its committee, the NNC, which had negotiated the agreement with UPS, was a party. Answer and Countercl. ¶ 6. On the other hand, IBT, which clearly is a party to this lawsuit, asserted on its own behalf a Fourth Affirmative Defense that "UPS's claims are subject to exclusive, final and binding determination through the applicable arbitration forum pursuant to the Agreement between UPS and the NNC."

Answer and Countercl. at 4. IBT also, in its own name, counterclaimed against UPS for the breach of the Master Agreement. Answer and Countercl. ¶¶ 18–21.

IBT filed a motion to dismiss in favor of arbitration, reiterating its Fourth Affirmative Defense.[1] At oral argument on the motion, counsel for UPS expressed concern about IBT's so-called non-party defense. *See* Transcript of Motions Hearing held May 27, 1994 at 15. But at argument, IBT appeared to acknowledge that it was a party to the Master Agreement, *see id.* at 11, and that its party status was the basis for its argument that arbitration was required. *Id.* at 4–13.

After hearing argument, this Court determined that the dispute was arbitrable under the collective bargaining agreement and dismissed the case so that the parties could arbitrate their dispute. *See United Parcel Serv.*, 859 F.Supp. at 596. UPS filed a motion for reconsideration or clarification that was granted in part. The Court ordered that

> The June 30, 1994 dismissal of plaintiff's claim is *without* prejudice until thirty (30) days after completion of the arbitration process. In the event that this matter is not resolved on the merits in arbitration, the parties may reopen the action upon motion approved by the Court. Should counsel fail to move to reopen the case within the prescribed period, the matter shall, without further order, stand dismissed *with* prejudice.

*United Parcel Serv.*, Civ. No. 94–0258 (Order of April 24, 1995). Before engaging in arbitration, UPS filed a motion to reopen the case, which was denied without prejudice. *United Parcel Serv.*, Civ. No. 94–0258 (Order of February 7, 1996).

Ultimately, the parties did arbitrate their dispute before Arbitrator Scott E. Buchheit, who issued an "interim" award against UPS on October 16, 1996 on the basis that UPS's grievance was untimely filed. *See* Arbitration Award of Scott E. Buchheit (hereafter

---

1. As was previously noted, because an answer had been filed, the Court treated the motion as one for judgment on the pleadings. *See United Parcel Serv.*, 859 F.Supp. at 592 n. 1. Currently pending is IBT's motion for judgment on the pleadings, even thought IBT has not answered the amended complaint. Whether IBT's pending motion should be styled a motion to dismiss instead is immaterial because the standard of review is "virtually identical." *Id.*

"Buchheit Op." or "Buchheit Award") at 1, attached as UPS's Mot. to Reopen Ex. D. He reached this conclusion for a "totality of reasons," one of which was that he believed that this Court would be available to hear the merits of the dispute if he did not.

On UPS's motion to reopen this action, the parties have returned to this Court. This action was reopened for the limited purpose of clarifying certain aspects of this dispute so that the Arbitrator could reconsider the interim October 1996 Opinion and Award and issue a final arbitration award in this matter.

### DISCUSSION

Section 301 of the Labor Management Relations Act, as amended, 29 U.S.C. § 185, and as interpreted by the Supreme Court and our Court of Appeals, sets forth an elegant and simple set of principles guiding the relationship between private arbitrators and federal courts in resolving disputes that arise out of collective bargaining agreements. *See, e.g., Cole v. Burns Int'l Sec. Serv.*, 105 F.3d 1465, 1473–76 (D.C.Cir.1997).

### A. Arbitrability

■ As was the case in this matter, where there is a collective bargaining agreement that contains an arbitration clause, and a lawsuit is filed for breach of the agreement prior to arbitration, a pair of clear-statement rules guide the courts in resolving the issues. Under one rule, unless the collective bargaining agreement clearly and unmistakably states that the question of arbitrability is for the arbitrator, the court will decide *de novo* whether the dispute is arbitrable under the agreement. *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *KenAmerican Resources, Inc. v. International Union*, 99 F.3d 1161, 1163 (D.C.Cir.1996).

■ If, as here, the court is to determine arbitrability, a two-step analysis is required.

First, the court must ascertain whether the parties to the lawsuit are also parties to the collective bargaining agreement and its arbitration clause. *KenAmerican*, 99 F.3d at 1163. Second, if they are, then the *Steelworkers Trilogy*[2] makes clear that the court must determine whether the dispute giving rise to the lawsuit turns on issues that lie within the zone of arbitrable issues established by the agreement's arbitration clause. *See United Parcel Serv.*, 859 F.Supp. at 594 (citing to portions of the *Steelworkers Trilogy*).

■ It is in this second step of the analysis that the other clear-statement rule comes into play: when considering whether the issues underlying a dispute lie within the zone of arbitrable issues created by the agreement, courts apply a very strong presumption in favor of arbitration. A dispute will be deemed to be arbitrable unless the parties' collective bargaining agreement clearly identifies a class of issues that lie outside the arbitration zone, and it is equally clear to the court that the dispute giving rise to the lawsuit turns on issues that belong in that class. *See AT & T Technologies, Inc.*, 475 U.S. at 650; *United Parcel Serv.*, 859 F.Supp. at 594.

■ If a dispute is arbitrable, the court should proceed no further. The lawsuit should be dismissed, and the parties should arbitrate their dispute. If they later seek judicial review of the arbitrator's decision, the standard of review is extremely deferential; a party seeking to vacate an arbitration award must ascend a "steep grade" to do so. *See Local 2094, American Fed'n of State County and Municipal Employees v. Howard Univ. Hosp.*, 996 F.Supp. 61 (D.D.C. 1998).

In this case, UPS filed its lawsuit prior to arbitration of its claim. Following the principles outlined above, this Court considered and decided both steps of the arbitrability analysis in 1994.[3]

---

**2.** *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel &*

*Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

**3.** To the limited extent that this Court's Order of July 8, 1997 states that the issue of whether IBT

### 1. Whether IBT is a Party to the Master Agreement

UPS alleged in its complaint that IBT was a party to the Master Agreement, *see* Compl. ¶ 6, and it has not wavered from this position. *See* Amended Compl. ¶ 7. On its face, IBT's answer and counterclaim to the initial complaint evinced an equivocal stance regarding its party status under the Master Agreement. Even in its current motion, IBT would clearly like to shroud its relation to the Master Agreement in ambiguity. "While the Company [UPS] and the IBT have disputed whether the IBT is a party to the Agreement, this dispute has never been material to resolution of this action." IBT J.P. Mem. at 2. IBT suggests that "[t]his Court should dismiss Count One [of the Amended Complaint] without resolving the issue of whether the IBT is a party [to the Master Agreement] . . . ." *Id.* IBT's suggestion comes far too late.

As an experienced and renowned labor organization, IBT could not be more familiar with the basic principles governing arbitration of disputes arising under collective bargaining agreements set forth above. Since arbitrability is a threshold determination, and the first step is to ascertain whether the parties to the lawsuit are parties to the agreement, it is disingenuous at best for IBT to suggest that resolution of IBT's party status under the Master Agreement "has never been material to resolution of this action."

■ Of course IBT is a party to the Master Agreement—at least as far as this case is concerned. This Court was not required to engage in elaborate findings on this point because UPS always considered IBT to be a party to the Master Agreement, and, notwithstanding paragraph 6 of the answer, IBT's conduct made clear that it had waived any objections to being held a party to the Master Agreement.[4] There was therefore no actual controversy about IBT's party status for the Court to resolve.

For example, IBT could not have, consistent with its obligations under Rule 11 of the Federal Rules of Civil Procedure, asserted its Fourth Affirmative Defense that UPS was obliged to arbitrate its claim against IBT unless IBT also was bound by the arbitration clause in the Master Agreement.[5] Nor could IBT have filed Count II of its counterclaim in good faith, claiming that UPS had breached the Master Agreement, unless IBT admitted it too was a party to that agreement with standing to make the claim. IBT could not have filed a motion to dismiss UPS's complaint and compel arbitration, and offer extensive argument to the Court to that effect, consistent with its Rule 11 obligations, unless IBT were a party to the agreement with contractual rights to seek arbitration.

Indeed, even prior to the filing of this suit, IBT signed a settlement agreement with UPS stating, in part, that:

> UPS preserves its claim, if any, against the IBT for damages arising from or relating to the work stoppage of February 7, 1994 for a violation of *the parties' collective bargaining agreement.*

IBT J.P. Mem. Ex. A ¶ 5 (emphasis added). Viewed in context, that sentence can only make sense if "the parties' collective bargaining agreement" references the fact that the parties to the settlement agreement, of which

---

is a party to the Master Agreement remains an open issue, that Order is vacated and modified to conform to the discussion that follows. In all other respects that Order remains in force and effect.

4. IBT's "non-party defense" appears to be the converse of the more-often-litigated claim by local unions that they are not bound by a national agreement. *See, e.g., Blake Constr. Co., Inc. v. Laborers' Int'l Union of North Am., AFL–CIO,* 511 F.2d 324, 328–30 (D.C.Cir.1975); *Bechtel Constr., Inc. v. Construction and General Laborers Local Union No. 721,* 640 F.Supp. 213, 215–16 (D.Mass.1986); *C.B.S., Inc. v. International Pho-*

*tographers of the Motion Picture Industry, Local 644,* 483 F.Supp. 880, 881–82 (S.D.N.Y.1979).

5. Under well-settled law going back to at least the early 1960s, courts can only compel arbitration between parties to a collective bargaining agreement. *See, e.g., John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 546–47, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) ("whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract *entered into by the parties* ") (emphasis added and internal quotations and citations omitted).

IBT was unmistakably one, were also parties to the Master Agreement.[6]

For all of these reasons and more, the Court implicitly found that IBT had waived any "non-party defense" it may have had and found instead that: "In the fall of 1993, the Teamsters United Parcel Service National Negotiating Committee ("NNC"), *acting on behalf of the IBT and its local unions,* entered into a collective bargaining agreement with UPS." *United Parcel Serv.,* 859 F.Supp. at 592 (emphasis added). As IBT has already recognized, the time to ask this Court to reconsider that finding or to appeal it passed long ago. *See* IBT's Opp'n to UPS's Mot. to Amend Compl. at 1 ("judgment has already issued"). It is now the law of the case, and the Court finds no basis whatsoever for revisiting this issue. *See Crocker v. Piedmont Aviation, Inc.,* 49 F.3d 735, 738–40 (D.C.Cir.1995) (extensive discussion of law of the case and waiver doctrines).

### 2. Whether This Dispute Lies Within the Master Agreement's Zone of Arbitrable Issues

Because there was no real controversy over IBT's party status, the focus of this Court's previous arbitrability analysis was the second step: whether UPS's claim against IBT for breach of the Master Agreement's no-strike provision and Count II of IBT's counterclaim were within the Master Agreement's arbitration zone. Both claims were, and are, arbitrable. *United Parcel Serv.,* 859 F.Supp. at 594–96. To the extent that UPS's motion to reopen this case was intended to invite this Court to revisit her prior ruling on the arbitrability of this dispute, that invitation is declined. The finding that UPS's claim for damages and IBT's counterclaim for reformation and damages are arbitrable is not subject to relitigation and is the law of this case. Therefore, because this dispute was, and is, arbitrable, and because it was arbitrated, it would appear that all that remains is for the Court to confirm or vacate that award.

---

6. At the very least, a serious question would arise as to whether that settlement agreement was supported by consideration or amenable to rescission under a bargaining defect doctrine, such as unilateral mistake, if IBT's promise to allow UPS to preserve its claims against IBT were an empty one because IBT was not party to the Master Agreement.

### B. Buchheit Award

However, the Buchheit Award was not final, and it was based, in part, on a fundamental, unambiguous, and material mistake of fact—namely that even after finding the dispute to be arbitrable, this Court could choose to hear its merits. In his Opinion, after setting forth certain reasons for why he found UPS's grievance to have been untimely filed, Arbitrator Buchheit concluded:

> Finally, I do not believe that dismissal of this grievance on timeliness grounds will lead to an injustice. More specifically, in her Order of April 24, 1995 Judge Green ruled that the June 30, 1994 dismissal of the Employer's lawsuit is without prejudice until thirty (30) days after completion of the arbitration process, and in the event the matter is not resolved on the merits in arbitration, the parties may reopen the action upon motion approved by the Court. Judge Green again reiterated this determination in her subsequent Order of February 7, 1996.
>
> I do not understand Judge Green's Orders merely to confer upon the Employer the right to seek a normal court review of this arbitration award. *Rather, I respectfully interpret the intent of Judge Green to be that if the Employer does not receive a hearing and determination on the merits of the dispute in arbitration, then she likely will provide a forum for that process before her. This is a relevant consideration for me, as the presumption in favor of arbitrability is at least in part based upon avoidance of a result that leaves a grieving party without the means to have the merits of a dispute addressed.* Where an alternative forum does exist, however, the presumption in favor of arbitrability is lessened.

Buchheit Op. at 20, 22–23 (emphasis added).

The well-settled principles governing arbitrability set forth at the opening of the discussion, *supra,* make clear that Arbitrator Buchheit's interpretation of this Court's

April 24, 1995 Order was erroneous. The "intent" of this Court's Order is immaterial to jurisdiction. The parties, in the Master Agreement, established a zone of arbitrable issues in which this dispute lies. And, as IBT forcefully argues, the Arbitrator lacks the power to confer jurisdiction to resolve the merits of an arbitrable dispute on this Court. *See* IBT Mem. in Supp. of Confirm. of Arb. Award at 36. Therefore, once this Court completed the two-step arbitrability analysis and determined that this dispute was arbitrable, the only possible role left would be to compel arbitration or to perform the "normal court review" of an arbitration award.

IBT· correctly recognizes that the Arbitrator erred in his understanding of this Court's jurisdiction, but IBT mistakenly brushes aside this error as mere immaterial *dicta*. *Id*. The . Arbitrator's opinion, however, makes clear that one of the cornerstones of his decision was his mistaken belief that UPS had available an alternative forum in which to air the merits of its grievance. The effect of this mistake must be considered.

■ As a general rule, a mere mistake of fact provides an insufficient basis for vacating an arbitration award. *See Local 2094*, 996 F.Supp. at 66 (citing *Kanuth v. Prescott, Ball & Turben, Inc.*, 949 F.2d 1175, 1178 (D.C.Cir.1991)). However, where a material mistake of fact arises not from the record before the arbitrator but from his reliance on a non-existent fact that ˙limits the scope of the arbitration, the award should not be enforced. *See Northwest Airlines, Inc. v. Air Line Pilots Ass'n Int'l*, 530 F.2d 1048, 1050 (D.C.Cir.1976). In the district court in *Northwest*, Judge Flannery had found that the arbitrator mistakenly believed that the parties had entered into a stipulation that removed an issue from the arbitration. Judge Flannery nonetheless felt compelled to confirm the award. Without disturbing that finding, the Court of Appeals held that the mistake of fact underpinning the award rendered it unenforceable. *Id*.

This case is analogous in that it appears that the Arbitrator's decision not to reach the merits of the dispute rested, in part, on a mistaken belief that this Court could do so.

Other courts have suggested that an arbitration award also can be vacated if it rests on an undisputed and unambiguous mistake of fact. *See Tanoma Mining Co. v. Local Union No. 1269, United Mine Workers of Am.*, 717 F.Supp. 357, 359–60 (W.D.Pa.1989) (reviewing cases); *cf. Livingston v. Woodworth*, 56 U.S. (15 How.) 546, 558, 14 L.Ed. 809 (1853) (arbitrator's award is binding "unless it could be assailed for fraud, misbehavior, or gross mistake of fact"); *Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 214 (5th Cir.1993) (award can be vacated for material mistake of fact under Federal Arbitration Act); *National Post Office v. United States Postal Serv.*, 751 F.2d 834, 843 (6th Cir.1985) (same).[7]

■ Whether the mistake of fact in the instant case is sufficient to require vacating the Buccheit Award need not be reached at this point. Because the award was styled as an "interim" award and because the mistake

---

7. So the record is clear, cases construing the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, are cited only by way of example. The FAA contains language that explicitly allows for an arbitration award to be vacated or modified upon certain conditions. *See* 9 U.S.C. §§ 10, 11. The mistake of fact here would clearly satisfy the § 10 criteria. However, the FAA excludes from its scope "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Since the Teamsters covered by the Master Agreement are quintessential "workers engaged in foreign or interstate commerce," it would appear that the only role of the FAA in this matter would be to serve as a guide for construing § 301 of the LMRA. The Court does not, however, hold that the criteria for vacating an award under the FAA are incorporated into § 301, and this Court recognizes that it remains an unsettled question that has split the circuits as to whether the FAA applies to arbitration awards arising out of a collective bargaining agreement. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 40, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (Stevens, J., dissenting); *Brown v. Trans World Airlines*, 127 F.3d 337, 340 (4th Cir.1997); *Miller v. Public Storage Management, Inc.*, 121 F.3d 215, 218 (5th Cir.1997); *Brisentine v. Stone & Webster Eng'g Corp.*, 117 F.3d 519, 525 (11th Cir.1997) (identifying circuit split); *Pryner v. Tractor Supply Co.*, 109 F.3d 354, 357–64 (7th Cir.1997); *Maryland Casualty Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 982 (2d Cir.1997).

of fact is material, the Buchheit Award will be neither confirmed nor vacated without further clarification. Instead, this dispute will be remanded to the Arbitrator to reconsider the October 1996 Opinion and Award in light of this Opinion and Order and to issue a final arbitration award. *See Landy Michaels Realty Corp. v. Local 32B–32J, Serv. Employees Int'l Union,* 954 F.2d 794, 797 (2d Cir.1992) (under FAA, limited authority may exist to remand "where the arbitration task has not been fully performed or where the uncertainty of an award requires clarification"); *Sargent v. Paine Webber Jackson & Curtis,* 882 F.2d 529, 533 (D.C.Cir.1989) (efficiency concerns dictate that remand to arbitrator is generally disfavored unless the record reflects a basis to insist on an explanation); *Oil, Chemical and Atomic Workers v. Union Oil Co. of Cal.,* 818 F.2d 437, 442 (5th Cir.1987) (courts have power to remand to arbitrator under Section 301 of LMRA); *United Steelworkers of Am. v. Hempt Bros.,* 866 F.Supp. 164, 169 (M.D.Pa.1994) (remanding to arbitrator for reconsideration).

It is regrettable that this dispute has bounced between decisionmakers without finding a final resolution. The delay appears to have resulted from the strategic behavior of each of the parties at various stages of this process, and from the fact that this Court's April 24, 1995 Order was not as crystalline as it might have been. But, in light of the jurisdictional rules governing arbitrability, and notwithstanding UPS's argument to the contrary, that Order is susceptible of only one coherent reading—that this action could only be reopened to seek an order compelling arbitration or, possibly, to confirm or vacate an arbitration award. *See* UPS Opp'n to Confirm Arb. Award at 3.

To avoid any similar snafues, the Amended Complaint will be dismissed with prejudice. In Count I of the Amended Complaint, UPS seeks damages for breach of the Master Agreement. That claim was, and is, arbitrable under both prongs of the arbitrability analysis. Therefore, this Count must be dismissed in favor of arbitration. To this extent, IBT's motion is granted. Count II is a claim in the alternative that springs to life only if IBT is not a party to the Master Agreement. Because it is the law of this case that IBT is a party to the Master Agreement, and IBT is estopped from relitigating this issue in this case, Count II lacks a factual predicate and also must be dismissed. The Court does not reach the issue of whether this claim would be preempted under the Labor Management Relations Act. Therefore, IBT's motion is denied as moot in this respect.

The Court cannot deny IBT the opportunity to submit its so-called "non-party defense" before the Arbitrator, should he choose to entertain that issue. But, under the Master Agreement and the relevant law, the proper forum in which IBT could have raised this defense was this Court. Therefore, a finding in an arbitration award that determines the party status of IBT under the Master Agreement would be entitled to "no deference" from this Court. *See KenAmerican,* 99 F.3d at 1163.

As to IBT's motion to confirm the arbitration award, that is not properly before the Court at this time. This dispute must be remanded to the Arbitrator to reconsider the October 1996 Opinion and Award and to issue a final arbitration award. Once that is done, if either party seeks judicial confirmation or review of the award, it shall be done by filing a new action in this Court as a related case under Local Rule 405(a)(4).

### CONCLUSION

Accordingly, for the reasons stated above and upon consideration of the entire record in this matter, it is hereby

**ORDERED** that IBT's Motion for Judgment on the Pleadings is GRANTED in part and DENIED in part as stated herein; and it is

**FURTHER ORDERED** that UPS's Amended Complaint is DISMISSED with prejudice; this dispute is REMANDED to The Arbitrator (1) for reconsideration of the October 1996 Opinion and Award in this matter in light of this Opinion and Order; and (2) for issuance of a final arbitration award. And it is

FURTHER ORDERED that IBT's Motion to Confirm Arbitration Award is DENIED without prejudice; and it is

FURTHER ORDERED that this Court's Order of July 8, 1997 [Dkt. No. 72] is vacated in part and modified to the limited extent set forth herein; and it is

FURTHER ORDERED that if, after issuance of a final arbitration award in this matter, either IBT or UPS seeks to confirm or vacate that award, it shall be done by filing a new action in this Court as a case related to this civil action per Rule 405(a)(4) of the Rules of the United States District Court of the District of Columbia.

IT IS SO ORDERED.