UNITED PARCEL SERVICE,
INC., Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, AFL–CIO, Defendant.

Civ. A. No. 94–0258 (JHG).

United States District Court,
D. Columbia.

June 30, 1994.

James L. Lunsey, Cotten, Weiss & Simon New York City, Earl V. Brown, Jr., Int'l Broth. of Teamsters, Daniel B. Edelman, Yablonski, Both & Edelman, Washington, DC, for defendant.

William H. Brown, III, Martin Wald, Nicholas N. Price, Axel J. Johnson, Schnoder, Harrison, Segal & Lewis, Philadelphia, PA, for plaintiff.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

 Plaintiff, United Parcel Service, Inc. ("UPS"), initiated this action against defendant, International Brotherhood of Teamsters, AFL–CIO ("IBT"), pursuant to the Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. § 141 *et seq.* UPS claims that IBT called a nationwide work stoppage on Monday, February 7, 1994 in violation of the no-strike provision of the parties' collective bargaining agreement. IBT filed a two-count counterclaim alleging that UPS violated § 502 of the LMRA and breached the collective bargaining agreement. The parties have filed dispositive motions directed at each others' claims.[1] Oral argument was heard on these motions on May 27, 1994. For the reasons expressed below, both motions are granted and this case is dismissed.

### I. Background

UPS is in the nationwide package pickup and delivery business. In the fall of 1993, the Teamsters United Parcel Service National Negotiating Committee ("NNC"), acting on behalf of the IBT and its local unions, entered into a collective bargaining agreement with UPS. This agreement, known as the National Master United Parcel Service Agreement ("Agreement"), provides the terms and conditions of employment for IBT members employed by UPS during the period August 1, 1993[2] through July 31, 1997.

Article 8 of the Agreement sets forth the mandatory grievance and arbitration procedure for questions of interpretation of the Agreement. In addition, it prohibits any work stoppage or lockout prior to completion of the grievance and arbitration procedures.[3]

IBT claims that during the negotiations for the terms of the Agreement, the Safety and Health Subcommittee of the NNC specifically addressed the maximum weight of packages. Counterclaims ¶ 6. IBT further asserts that UPS representatives "promised and represented ... that UPS had no intention of increasing its applicable maximum weight rule during the term of the Agreement then being negotiated." Counterclaims ¶ 7. IBT avers that based on that representation, it refrained from insisting upon a provision specifically addressing the maximum package weight and believed that the maximum package weight permitted by the Agreement was 70 pounds. Counterclaims ¶ 8. It is undisputed that there is no provision in the Agreement expressly addressing the maximum package weight.

Sometime prior to January 12, 1994, UPS informed the IBT that UPS would be picking up and delivering packages weighing up to 150 pounds beginning February 7, 1994. UPS alleges that it attempted to discuss the implementation of this new service with IBT but the parties were unable to resolve their differences. Complaint ¶ 10.

On February 1, 1994, the IBT submitted a "grievance" to UPS protesting UPS's deci-

1. Although defendant's motion is captioned as a motion to dismiss, it is actually a motion for judgment on the pleadings because IBT filed an answer prior to filing its dispositive motion. *See* Fed.R.Civ.P. 12(c). The standard of review on either a motion to dismiss or for judgment on the pleadings "is virtually identical." *Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C.Cir.1987).

2. The complaint states that the parties entered into the Agreement "[i]n the fall of 1993" but that its effective date was August 1, 1993. Complaint ¶ 6. The Court assumes that it was retroactively implemented or the reference to "the fall of 1993" was in error.

3. Article 8 provides, in pertinent part:

 Section 2

 All grievance and/or questions of interpretation arising under the provisions of this National Master Agreement shall be submitted to the grievance procedure for determination. Accordingly, no work stoppage, slowdown, walkout or lockout over such grievances and/or questions of interpretation shall be deemed to be permitted or authorized by this Agreement except:

 (a) failure to comply with a duly adopted majority decision of the National Grievance Committee;

 (b) failure to make health and welfare and pension contributions in the manner required by the applicable Supplemental Agreements, Riders and/or Addenda; and,

 (c) nonpayment of established wage rates provided in this Agreement, Supplements, Riders and/or Addenda,

 * * * * * *

sion to implement the new service on February 7, 1994. The "grievance" alleged that this new service violated various provisions of the Agreement. The parties each claim that the other party refused to arbitrate this dispute.

UPS asserts that during the week of January 31, 1994, IBT threatened to call a nationwide work stoppage beginning Monday, February 7, 1994 unless UPS did not implement the new service on that date. Complaint ¶ 16. On Friday, February 4, 1994, UPS sought and obtained a Temporary Restraining Order ("TRO"), which prohibited IBT from, *inter alia,* encouraging or participating in any strike, picketing, work stoppage or walkout in connection with UPS's increase in weight restriction for the pickup and delivery of packages from 70 pounds to 150 pounds. The TRO also required UPS to arbitrate at the request of IBT.

Plaintiff further asserts that prior to February 7, 1994, and after the February 4, 1994 TRO, the IBT directed local unions to strike, picket or walkout on February 7, 1994 over UPS's new weight restriction policy. Complaint ¶ 18. Numerous IBT members commenced a strike on February 7, 1994 and UPS filed a motion for contempt of the TRO that same day. At approximately 6 p.m. that evening, after the Court began a hearing on the motion for contempt, the parties agreed to the procedures to be used to resolve their differences regarding the increase in maximum weight. As part of the settlement, UPS reserved the right to bring an action for damages resulting from the strike. UPS did so, commencing this action two days later.

The sole count in the complaint alleges that the strike was in violation of the no-strike provision of the Agreement. UPS seeks compensatory damages for the actual economic harm suffered on the day of the strike and for temporary and permanent loss of customer confidence and goodwill resulting from the strike. UPS also seeks punitive damages for "Defendant's willful, wanton, deliberate, knowing and egregious instigation and direction of an unlawful strike." Complaint at 8.

IBT filed a two-count counterclaim. In Count I, the IBT raises a claim pursuant to § 502 of the LMRA to recover lost wages and other compensation which it claims resulted from UPS's implementation of the revised weight rule notwithstanding the abnormally dangerous working conditions it presented. Count II asserts that the 70 pound weight limit was a custom and practice under the preceding collective bargaining agreements and seeks to reform the Agreement to carry forward this custom as a binding term of the Agreement.

## II. *Discussion*

■■■ In viewing a motion to dismiss or for judgment on the pleadings, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). At this stage, the Court must accept as true the factual allegations of the complaint, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984), and draw from them all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Haynesworth,* 820 F.2d at 1254.

■■■ Summary judgment, in contrast, is appropriate when there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513. At the same time, however, Rule 56 places a burden on the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

## A. *Defendant's Motion*

IBT argues that the entire claim must be dismissed because it must be arbitrated. Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss ("Defendant's Mem.") at 4. As stated above, the Agreement provides, in pertinent part:

> All grievance and/or questions of interpretation arising under the provisions of th[e Agreement] shall be submitted to the grievance procedure for determination.

Agreement, Art. 8, § 2. IBT asserts that this broad language requires UPS to submit all claims to arbitration. *See Drake Bakeries, Inc. v. American Bakery*, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962).

UPS counters by asserting that the grievance and arbitration procedures in the Agreement do not provide UPS, the employer, with a mechanism to initiate a grievance against IBT for a breach of the no-strike provision. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Plaintiff's Opp.") at 7. It argues that, as a result, the case is properly raised in federal court. *See Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962).

Arbitration "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). To determine whether the mandatory grievance and arbitration procedures apply, the Court must determine whether the claim is governed by the contract at issue. *See Atkinson*, 370 U.S. at 241, 82 S.Ct. at 1320–21; *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 1346–47, 4 L.Ed.2d 1403 (1960).

Nonetheless, the Supreme Court has consistently instructed that there is a strong presumption in favor of arbitration in labor disputes. *See, e.g., AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986). In fact, this presumption is so strong that an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior & Gulf*, 363 U.S. at 58–83, 80 S.Ct. at 993–1007 (quoted in *AT & T Technologies, Inc.*, 475 U.S. at 650, 106 S.Ct. at 1419); *see Blake Constr. Co. v. Laborers' Int'l Union*, 511 F.2d 324, 327 (D.C.Cir.1975). Thus, a collective bargaining agreement must be interpreted "as imposing arbitration requirements on an employer unless 'there is an express, flat limitation' that arbitration boards should consider *only* employee grievances." *Domino Sugar v. Sugar Workers Local 392*, 10 F.3d 1064, 1069 (4th Cir.1993) (quoting *Atkinson*, 370 U.S. at 243, 82 S.Ct. at 1322).

UPS can point to no such limitation. The arbitration clause in the Agreement provides that "All grievances and/or questions of interpretation arising under the provisions of this National Master Agreement shall be submitted to the grievance procedure for determination." Agreement, Article 8, § 2. This language is clearly broad. *See AT & T Technologies, Inc.*, 475 U.S. at 650, 106 S.Ct. at 1419 (noting that broad arbitration language in a collective bargaining agreement renders the presumption of arbitrability "particularly applicable").[4] Moreover, the very next sentence in the Agreement prohibits work stoppages: "Accordingly, no work stoppage, slowdown, walkout or lockout over such grievances and/or questions of interpretation shall be deemed to be permitted or authorized." Agreement, Article 8, § 2. It is hard to construe this Agreement to prohibit a grievance from an unauthorized strike,

---

4. In addition, the Rules of Procedure of the National Grievance Committee provide that the committee "shall have jurisdiction over ... [a]ll grievances and/or questions of interpretation of the provisions of the National Master Agreement." Article II, § 1(A)(1). Defendant's Reply, Exhibit 3.

and it cannot be said "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Technologies, Inc.*, 475 U.S. at 650, 106 S.Ct. at 1419 (citation omitted).

In addition, there is no limiting language, as in *Atkinson,* upon which UPS relies heavily for its argument. In *Atkinson,* the collective bargaining agreement provided that the local arbitration boards "shall consider *only* individual or local employee or local committee grievances arising under the application of the currently existing agreement." 370 U.S. at 243, 82 S.Ct. at 1322 (emphasis added). UPS points to no provision in the Agreement containing similar limitations.

Due to the broad language of the Agreement and the absence of any limitation on its coverage, UPS cannot overcome the strong presumption in favor of arbitration in this case. Defendant's Motion to Dismiss, therefore, will be granted.

### B. *UPS's Motion to Dismiss or for Summary Judgment on the Counterclaims*

Count I of IBT's counterclaim seeks recovery of wages and compensation lost by IBT members as a result of UPS's allegedly illegal conduct in raising the weight restriction. UPS moves to dismiss this count on the basis that § 502 of the LMRA, upon which this claim is based, does not provide a private right of action.

Section 502 of the LMRA provides, in pertinent part:

> [N]or shall the quitting of labor by an employee or employees in good faith because of abnormally dangerous conditions for work at the place of employment of such employee or employees be deemed a strike. . . .

29 U.S.C. § 143. Because this statute does not, on its face, create a cause of action, the IBT must show that Congress intended to create an implied right of action. *See Suter v. Artist M.,* —— U.S. ——, ——, 112 S.Ct.

1360, 1370, 118 L.Ed.2d 1 (1992); *Thompson v. Thompson,* 484 U.S. 174, 178, 108 S.Ct. 513, 515–16, 98 L.Ed.2d 512 (1988). The focal point of this inquiry is "Congress' intent in enacting the statute." *Id.; Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

IBT cannot carry this burden. The language of the statute plainly suggests that its purpose is to specify those instances in which an employee walkout will not be deemed a "strike." Further, the statute does not impose any affirmative duty on an employer, it merely assures that employees will not lose the protections of the LMRA if they cease work due to abnormally dangerous conditions. This provision, by its terms, provides employees with a defense and certain protections; it does not provide them with an affirmative cause of action. Accordingly, Count I of the counterclaim will be dismissed.[5]

In Count II of the counterclaim, IBT claims that the parties' past practice of limiting the maximum package weight to 70 pounds has become a binding term of the Agreement and that UPS breached this implied term. IBT seeks damages for breach of this implied term and reformation of the Agreement to include this provision. IBT also claims that it was fraudulently induced to enter into the Agreement by UPS's indication that the maximum package weight would not be increased.

UPS asserts that this claim must be dismissed because IBT has failed to exhaust the Agreement's mandatory grievance and arbitration procedure. IBT argues that UPS should be estopped from asserting this defense due to its repudiation of the grievance procedure. Counterclaim Plaintiff's Memorandum of Points and Authorities in Opposition to Counterclaim Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defendant's Mem.") at 17–18. IBT alternatively asserts that its claim is not subject to arbitration or that its obligation to

---

5. Notably, the IBT does not point to either the legislative history of the LMRA or the language of the § 502 itself. Its sole evidence that § 502 creates a private right of action is *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 450–51, 77 S.Ct. 912, 914–15, 1 L.Ed.2d 972 (1957), in which the Supreme Court indicated that courts should use "judicial inventiveness" to solve problems under the LMRA. *Id.* at 456–57, 77 S.Ct. at 917–18.

arbitrate is not enforceable because it was induced by fraud. *Id.* at 21–22.

■■■ None of IBT's arguments has any merit. First, UPS did not repudiate the grievance procedure. It notified the IBT in its moving papers for the TRO that it was ready to arbitrate and sought, and received, a TRO that required it to arbitrate "upon request by the IBT." The IBT has never made such a request. Second, the IBT's request to conform the Agreement to reflect past practice of the parties is arbitrable. This claim does not seek to add a new term to the Agreement, which could not be determined by an arbitrator, but merely seeks an interpretation of the existing Agreement as to whether it includes the implied term. Finally, IBT's evidence of "fraud" could be presented to the arbitrator as proof of its claim regarding the implied term of the Agreement. Accordingly, summary judgment will be granted in favor of UPS on Count II of the counterclaim.

### III. *Conclusion*

For the reasons expressed above, it is hereby

ORDERED that defendant's Motion to Dismiss is granted; and it is

FURTHER ORDERED that plaintiff's Motion to Dismiss Defendant's Counterclaims or, in the Alternative for Summary Judgment on Count II is granted. Count I of the counterclaim will be dismissed and summary judgment will be granted in favor of plaintiff, UPS, as to Count II.

IT IS SO ORDERED.