**Elizabeth GANZI, Greater Washington Exploratory Committee Plaintiffs**

v.

**THE WASHINGTON–BALTIMORE REGIONAL 2012 COALITION, Kenneth R. Sparks, Federal City Council, Donald E. Graham Mary Junck, Alfredo La Mont, the United States Olympic Committee, Marion Barry, Defendants**

No. CIV.A. 99–CV–3379JLG.

United States District Court, District of Columbia.

May 25, 2000.

Larry Klayman, Paul J. Orfanedes, Judicial Watch, Inc., Washington, DC, for Plaintiffs.

Roger W. Yoerges, Brent J. Gurney, Andrew B. Weissman,Wilmer, Cutler & Pickering, Stan A. Jensen, Hogan & Hartson, L.L.P., Washington, DC, John W. Cook, Virginia S. Morgan, Colorado Springs, Kevin T. Baine, Jane E.Genster, Williams & Connolly, David Winston Wilmot, Harmon & Wilmot, L.L.P., Washington, DC, for Defendants.

### *MEMORANDUM*

JUNE L. GREEN, District Judge.

Before the Court is Defendants Washington–Baltimore Regional 2012 Coalition, Kenneth R. Sparks, and the Federal City Council's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants Mary Junck and Donald E. Graham join in this motion.

Plaintiffs oppose the motion. For the reasons that follow, Defendants' motion is granted and this case is dismissed in its entirety.

## BACKGROUND

Plaintiffs, a local business entrepreneur and her company, bring suit against numerous Defendants whom, she alleges, conspired improperly to wrest control from her of the District of Columbia's "Official Bid" to host the 2012 Olympic games. She asserts numerous common law claims (promissory estoppel, unjust enrichment, conversion, fraud, tortious interference with business relations, conspiracy) and one federal claim: the Racketeer Influenced and Corrupt Organizations provision ("RICO") of the Organized Crime Control Act of 1970. Jurisdiction is premised on the RICO claim.

The following are facts alleged in the Complaint, which the Court takes as true for purposes of this motion to dismiss. In 1997, Plaintiff Elizabeth Ganzi embarked on a plan to bring the Olympic Games to Washington, D.C. and formed her company, Greater Washington Exploratory Committee ("GWEC"), for that purpose. In January of that year, she secured a letter from Defendant Marion S. Barry, Jr., then Mayor of Washington, D.C., designating her as the District of Columbia's official representative to the United States Olympic Committee ("USOC") for purposes of attending a "bid seminar." (Compl.¶ 21.) The bid seminar instructed representatives of applicant cities on the requirements for submitting an official bid. Ms. Ganzi was informed that any bid must contain certain documentation, a letter of intent signed by the mayor designating the official bid organization, and a $100,000 deposit. The due date was May 1, 1997. (Compl.¶ 23.)

Plaintiff raised the $100,000 from area businesses, obtained the letter of designation from Defendant Barry, and, along with the bid documentation, submitted all on May 1, 1997. (Compl.¶ 32.) Several weeks later, the USOC recommended against nominating a U.S. city for the 2008 Olympic Games, but decided that the submitted bids would instead be considered for the 2012 Olympics. (Compl.¶ 36.)

Throughout the summer and fall of 1997, Plaintiff Ganzi continued her efforts in furtherance of winning the bid for Washington, D.C. She recruited additional corporate sponsorship, gathered information on financing, fundraising, communications and infrastructure, and even obtained venue and feasibility studies on where Olympic events could be held. (Compl.¶¶ 37–41.)

On October 25, 1997, Ms. Ganzi was contacted by Defendant Kenneth R. Sparks, Executive Vice President of an organization called the Federal City Council. Although initially offering support for Ms. Ganzi and her efforts, it is alleged that Mr. Sparks was engaged in a subterfuge designed to induce Ms. Ganzi into sharing the proprietary information she had been gathering. The ultimate goal of this subterfuge was to wrest control of the "bid" from Ms. Ganzi and GWEC. (Compl.¶ 60.)

A meeting was arranged by Defendant Sparks, hosted by two prominent business leaders from Washington and Baltimore; Katherine Graham and Defendant Mary Junck, respectively. (Compl.¶ 67.) Other business leaders from both cities attended as well, and both Ms. Ganzi and the official designate of Baltimore's bid, John Moag, gave presentations. Following the presentations, Mr. Moag and Ms. Ganzi were asked to leave and those remaining decided to form a Business Steering Committee to explore how best to combine the District of Columbia bid with the Baltimore bid.[1] Defendant Sparks was named the Chairman. (Compl.¶ 73.)

The Business Steering Committee decided that the Washington, D.C. and Baltimore bids should be combined in order to

---

1. The Defendant 2012 Coalition is the successor in interest to the Business Steering Committee. (Compl.¶ 74.)

increase the likelihood of winning the 2012 Games for the entire region and contacted the Defendant USOC in this regard. Notwithstanding promises made to Ms. Ganzi, and their own rules that only one official representative would be recognized, USOC officials began to confer with the Business Steering Committee. (Compl.¶ 78.) In January 1998, Defendant Sparks and the Business Steering Committee began contacting Ms. Ganzi's business sponsors (some of which included their own membership) and convinced them to withhold their contributions. (Compl.¶¶ 79,80.)

On Febaruary 1, 1998, another meeting took place between Ms. Ganzi, Defendant Sparks and the Business Steering Committee under the premise that the committee wished to discuss ways of combining the District of Columbia and Baltimore bids. (Compl.¶ 85.) Again, Ms. Ganzi presented proprietary information on the assets, liabilities and other finances of her company, GWEC. Ms. Ganzi made clear to the Business Steering Committee that she would not agree to combining the bids unless she and her company were granted the following: a clear majority of the seats on the new board of directors, a designation that GWEC be the company to continue the effort, and a salaried position for Ms. Ganzi that would pay between $150,000 and $175,000 per year. (Compl.¶¶ 88–89.) The committee members rejected these terms. (Compl.¶ 90.)

At another meeting on March 20, 1998, the Business Steering Committee presented its work to the original group of business leaders and recommended that the two bids be combined, that a new entity be created to take over the bid, and that board members be limited to those willing to make a $500,000 contribution to the effort. (Compl.¶¶ 106–08.) For her efforts, Ms. Ganzi was offered a position on the new board of directors and a waiver of the $500,000 contribution requirement. (Compl.¶ 113.)

In April 1998, members of the Business Steering Committee and Defendant Sparks promised Defendant Barry that they would provide funding for his retirement if he agreed to switch his allegiance from Ms. Ganzi to the joint bid under their control. (Compl.¶¶ 117, 125.) On June 30, 1998, Defendant Barry did so, announcing his support for the 2012 Coalition. (Compl.¶ 130.) That same day the USOC acknowledged in writing the receipt of a letter from Defendant Barry (as Mayor of Washington, D.C.) and Baltimore Mayor Kurt Schmoke designating the 2012 Coalition as the official representative of the joint bid for the two cities. (Compl.¶ 131.) Based upon this letter, and despite its earlier position that GWEC was the sole representative of the Washington, D.C. area, the USOC granted that status to Defendant 2012 Coalition. (Compl.¶ 131.) Ms. Ganzi was effectively excluded from any further participation in the bid process. She claims damages as a result.

Defendants 2012 Coalition, Kenneth Sparks and Federal City Counsel (Defendant's Mary Junck and Donald Graham join the motion) seek dismissal of the case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the basis that there is no actionable RICO claim, and, as a result, the Court does not have jurisdiction over the remaining common law claims as there is not complete diversity.

### DISCUSSION

The Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When determining the merits of a plaintiff's claim, the court must accept as true the factual allegations of the Complaint. *United Parcel Serv., Inc. v. International Bhd. of Teamsters*, 859 F.Supp. 590, 593 (D.D.C.1994). The only issue before the Court is whether the facts as pled can give rise to a RICO claim. For the reasons that follow, the Court holds they can not.

### Pattern Requirements of RICO

Under 18 U.S.C. § 1962(b), it is unlawful for any person "through a pattern of racketeering activity" to acquire control of, or an interest in, any enterprise engaged in interstate commerce.[2] To establish a pattern, a Plaintiff must show that the predicate acts are related and that they "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). If the alleged predicate criminal activity has ended, as argued here, a pattern may still be shown, but the Court must consider such factors as 1) the number of unlawful acts; 2) the length of time over which the acts were committed; 3) the similarity of the acts; 4) the number of victims; 5) the number of perpetrators; and 6) the character of the unlawful activity. *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C.Cir.1995).

The predicate acts in this case are alleged to be misrepresentations that induced Ms. Ganzi to disclose proprietary information to the Defendants, and additional acts that enabled the Defendants to supplant her as the official representative for the District of Columbia bid for the 2012 Olympics. The Defendants allege that at worst, this was a single scheme, over a relatively short amount of time, with only two victims and a single injury (Ms. Ganzi's loss of control of the official bid). They assert that such activity falls short of the requirements to prove a pattern under RICO. The Defendants are correct.

In the *Edmondson* case, our Court of Appeals was faced with a similar situation. There, a tenants association was accused by a real estate developer of improperly exercising its right of first refusal to purchase an apartment building in which members of the association lived. More than 15 predicate acts were alleged, all with the purpose of thwarting the developer's plans to purchase the building if he did not pay a "ransom" to the association. The Court of Appeals affirmed dismissal of the RICO claim holding that "a single scheme ... designed to frustrate one transaction and inflicting a single, discrete injury on a small number of victims—fails to meet RICO's requirement of a 'pattern of racketeering activity.'" *Id.* at 1263. There is no difference here. The goal of the scheme was to wrest control from Ms. Ganzi of the official bid and this was achieved on June 30, 1998. The injury was the loss of the bid.

With regard to the number of victims, the Defendants argue that there were, in fact, many victims here including not only Ms. Ganzi and the officers of her company, but local businesses, other cities bidding for the Olympic games and the entire Olympic bid process, as well. The Court rejects such a broad interpretation of who may be considered a victim under RICO. Under Plaintiff's approach even the American public could be considered victimized.[3] That argument amounts to a simple public policy test. Although the public interest is, of course, at the very foundation of RICO, the Court does not believe it to apply so broadly with respect to calculating the number of victims for purposes of the "pattern" analysis. The two victims here are the Plaintiffs: Ms. Ganzi and GWEC.

There is an even more compelling reason for dismissal than the single scheme/number of victims factors and that is the duration of the alleged activity. In *Edmondson*, the period of time over which the predicate acts occurred was three years, which, with the other factors, the Court found to be insufficient. *Id.* at 1265. Here, the Complaint sets the date of the

---

**2.** Plaintiffs also allege violation of 18 U.S.C. 1962(d) which makes it unlawful to "conspire" to violate subsection (b). (Compl.¶ 179.)

**3.** Plaintiff's counsel actually alluded to this very thing at oral argument.

first possible predicate act as October 25, 1997, the date that Defendant Sparks first contacted Ms. Ganzi to schedule the initial meeting. (Compl.¶ 46.) The date of the last possible predicate act was June 30, 1998, when Defendant Barry announced his support for the 2012 Coalition and the USOC recognized the Coalition as the official bid representative. (Compl.¶¶ 130,131.) That is a period of only eight months. The Supreme Court made clear in *H.J. Inc.* that where the period of time is closed, the series of related predicates must extend over a substantial amount of time. The court stated: "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." 492 U.S. at 242, 109 S.Ct. 2893. While there is no binding authority that expressly says eight months is not long enough to show a RICO pattern, the overwhelming amount of persuasive authority relied upon by Defendants, indicates just that. *See Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.,* 187 F.3d 229, 242 (2d Cir.1999)(noting that Second Circuit has never held less than two years of activity to be sufficient to form RICO pattern); *Vemco, Inc. v. Camardella,* 23 F.3d 129, 134 (6th Cir.1994)(single scheme over seventeen months insufficient to form RICO pattern); *Hughes v. Consol–Pennsylvania Coal Co.,* 945 F.2d 594, 611 (3d Cir. 1991)(twelve months not substantial enough to show pattern). By itself, the short duration of the alleged predicate activity is sufficient to warrant dismissal of the RICO count, but together with the single scheme/two victims factors, that result is all but compelled.

In what appeared to be a last attempt to avoid dismissal of the RICO claim, the Plaintiffs for the first time at the oral argument took the position that the predicate acts had not ceased, but, in fact, are ongoing in the sense that the 2012 Coalition continues to act without authority as the new bid representative of the Washington/Baltimore area. According to Plaintiffs, each and every act undertaken by the 2012 Coalition in its role as the new bid representative is a predicate act for purposes of the RICO pattern requirement. The Court rejects this argument. There is no disagreement that this was a single scheme and that its objective was obtained when control of the bid was wrested from Ms. Ganzi in June of 1998. Even construing the allegations in a light favorable to the Plaintiffs, it simply is not reasonable to view the predicate acts as ongoing where, as here, the scheme has ended.[4]

Accordingly, the Court dismisses the RICO claim with prejudice.

### Remaining Common Law Claims

With the dismissal of the RICO count, the Defendants urge dismissal of the remaining common law claims as well. Under 28 U.S.C. § 1367(c), a district court may, in its discretion, decline to exercise supplemental jurisdiction (formerly "pendant" jurisdiction) over a claim when:

(1) The claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction.

(4) . . . .

28 U.S.C. § 1367(c). In *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the

---

4. Ms. Ganzi suggests that she will amend the Complaint to further conform to the requirements of RICO, even adding other predicate acts such as violation of the Travel Act, 18 U.S.C. § 1952(a), which makes it illegal to travel in interstate commerce to promote unlawful activity. (Pl. Opp. at 10, n. 5.) Considering that the core facts in this case (single, short duration scheme) would not change, however, such amendments would be unavailing and have no effect on the outcome of the Court's ruling.

Supreme Court listed judicial economy, convenience, fairness and comity as relevant factors to be considered in any such analysis.

■ In this case, original jurisdiction under 28 U.S.C. § 1331 is premised on the RICO claim alone. (Compl.¶ 13.) The remaining claims, promissory estoppel, unjust enrichment, conversion, fraud, tortious interference with business relations, and conspiracy, are all District of Columbia common law claims. This alone is a basis for dismissal under subsection (3) of section 1367(c)(dismissal of all claims over which Court had original jurisdiction). The same may also be said of subsection (2), which permits dismissal where the common law claims predominate over the federal claim. That certainly is the case here where only one of the seven original claims in the Complaint was the RICO claim. With regard to subsection (1)(novel or complex issue of state law), the Court is without a firm opinion. It is worth noting, however, that the Court of Appeals in *Edmondson* found the common law claim of "tortious interference with contractual relations," a claim similar to the "tortious interference with business relations" pled in this case, to be sufficiently unsettled that subsection (1) was applicable. *See Edmondson* at 1266; *see also* Compl. ¶¶ 163–69. In any event, subsections (2) and (3) each serve as an independent basis to decline supplemental jurisdiction.

Finally, the Court finds that the remaining factors favor dismissal as well. First, there is no evidence that the parties will suffer prejudice in dismissing this case. The Plaintiffs may refile in the District of Columbia Superior Court within 30 days under the tolling provision of section 1367(c). Moreover, judicial economy is served insofar as the Court has invested no time on any of the common law claims; to wit, there has been no trial and no analysis of those claims. As far as convenience is concerned, the Court sees little difference between having the parties litigate the remaining claims in this Court or in the Superior Court.

## CONCLUSION

For the reasons stated, the Court finds that the Plaintiffs have failed to state a claim upon which relief can be granted with regard to the RICO count. Moreover, the remaining common law claims should be dismissed without prejudice because there is an insufficient basis, in the Court's view, to exercise supplemental jurisdiction under 28 U.S.C. § 1367. An appropriate Order accompanies this Memorandum.

## ORDER

For the reasons stated in the accompanying Memorandum of Law and for good cause shown, it is by the Court this 25th day of May 2000,

**ORDERED** that Defendants' Motion to Dismiss is **GRANTED** and Count VII of the Complaint brought pursuant to 18 U.S.C. § 1961 *et seq.* (RICO) is **dismissed with prejudice**. The remaining counts (I–VI), all common law, are **dismissed without prejudice** pursuant to 28 U.S.C. § 1367. It is further

**ORDERED** that Defendants' Motion for Expedited Consideration of [its] Pending Motion to Dismiss is **DENIED** as moot; it is further

**ORDERED** that Defendants USOC and Sheila M. Walker's Motion to Stay Action and Compel Arbitration is **DENIED** without prejudice.